IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMI COUTTS, | : | CIVIL ACTION NO. **3:CV-05-512** |
| Plaintiff | : | (Judge Munley) |
| v. | : | (Magistrate Judge Blewitt) |
| JOANNE B. BARNHART,<br>Commissioner of<br>Social Security, | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, Tami Coutts, is seeking review of the decision of the Commissioner of Social Security (Commissioner) which denied her claim for disability insurance benefits (DIB) pursuant to Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-33.

**I. PROCEDURAL HISTORY.**

The Plaintiff protectively filed an application for DIB on April 25, 2002, alleging inability to work since July 28, 2001 due to constant back pain, headaches, dizziness, and the effects of pain medication. (R. 51, 62). The Plaintiff's claim was denied initially, on July 12, 2002, and on September 9, 2002, she filed a timely request for an administrative hearing. (R. 47). A hearing was held before an Administrative Law Judge (ALJ) on October 21, 2003, at which the Plaintiff and a vocational expert (VE) testified. (R. 775-880). The Plaintiff was denied benefits pursuant to the ALJ's December 13, 2003 decision. (R. 33). The Appeals Council denied the Plaintiff's request for

review on January 31, 2005, thereby making the ALJ's decision the "final decision" of the Commissioner. (R. 4). 42 U.S.C. § 405(g) (2005). That decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 7 & 10).

## II. STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the

region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520 (2004). *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. 20 C.F.R. §§ 404.1520, 416.920.

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity." *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No.4. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that she is unable to perform her past relevant work. *See* 20 C.F.R. §§404.1520(e)-(f), 416.920(e)-(f). The Plaintiff bears the burden of demonstrating an inability to return to her past relevant work. *Plummer*, 186 F.3d at 428. Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with her medically determinable impairments, functional limitations, age, education and work experience. 20 C.F.R. §§

404.1520(g), 416.920(g), 404.1560(c), 416.960(c).  This is Step Five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors.  *Id.*

The ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Act.  (R. 12-32).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity since her alleged onset date.  (R. 12).  At steps two and three, the ALJ concluded from the medical evidence that the Plaintiff's lumbar strain and depression were severe within the meaning of the Regulations, but not severe enough, either singly or in combination, to meet or equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4.  (R. 13).  The ALJ paid particular attention to 20 C.F.R Part 404, Subpart P, appendix I, Listing 12.04 for affective disorders but found that the Plaintiff failed to meet the listing requirements. (R. 14).  At step four, the ALJ found that the Plaintiff's allegations regarding the extent of her limitations were not credible.  (R. 15).  Finally, at step five, the ALJ found that the Plaintiff had no past relevant work but retained the residual functional capacity (RFC) to perform light work, and, by inclusion, sedentary work.  (R. 29-30).  Thus, the Plaintiff was found to be not disabled within the meaning of the Act.  (R. 32).

## IV. DISCUSSION.

### *A. Background*

The Plaintiff, thirty-nine-years-old at the time of the ALJ's decision, was considered a younger individual. (R. 780). 20 C.F.R. § 416.963(c).  She has a high school diploma and past work experience as a deli manager, office manager, and boat detailer.  (R. 780-81).

The Plaintiff alleged an inability to work due to constant low back pain, left knee problems, and depression resulting from a July 28, 2001 motor vehicle accident. (R. 779).[1] The Plaintiff was rear-ended, but was wearing her seat belt and did not hit the windshield or lose consciousness. (R. 217). A cervical spine x-ray performed on July 29, 2001, showed a "normal cervical spine" with no fracture, no disc space narrowing, no prevertebral soft tissue swelling, and C1-C7 appearing in anatomic alignment. (R. 325).

Two days after the accident, on July 30, 2001, the Plaintiff sought pain treatment from Charles Aronica, M.D., her primary care physician. (R. 217). Dr. Aronica noted extreme muscle spasms and tension in her posterior neck, and diagnosed neck strain. *Id*. He recommended a course of Motrin, Flexeril, and Vicodin for pain. *Id*. The Plaintiff began treatment with Dr. Aronica on a regular basis. (R. 63-89). She continued to complain of back pain and resulting depression, which were also Dr. Aronica's primary diagnoses. (R. 647, 648, 649, 651).

The Plaintiff's pain treatment included physical therapy, pain medications, and bilateral sacroiliac and bilateral L5-S1 joint injections. (R. 120-145, 717-51, 215, 217, 249, 200). The Plaintiff attended physical therapy from August 7, 2002 to November 29, 2001. (R. 144, 120). She reported decreased neck pain after six sessions, but still reported low back and leg pain. (R. 141). The Plaintiff attended eight more sessions, at the end of which she rated her pain as four/five on a ten-point scale. (R. 120-45). She returned for another course of physical therapy from September

---

[1] The Plaintiff contends on appeal only that the ALJ erred with respect to his findings regarding her back pain and depression, not with respect to his findings regarding her other alleged problems, which included knee pain, brain aneurysm, a colon impairment, a breathing impairment, a breast lump, and a lower extremity vascular impairment, all of which the ALJ found not to be severe impairments under the Act. (R. 13-14). We therefore confine our review to the ALJ's decision regarding the Plaintiff's back pain and depression.

2002 to January 2003. (R. 717-51). Dr. Aronica recommended the muscle relaxer Flexeril and the pain medications Motrin and Vicodin. (R. 214, 215, 217, 218). On October 19, 2001, Scott Epstein, M.D., a rehabilitation specialist to whom Dr. Aronica referred the Plaintiff, recommended continued chiropractic care, facet and sacroiliac joint injections, and physical therapy. (R. 202-03).

Several objective medical tests were performed between the time of the Plaintiff's accident and the hearing. Straight leg raise tests on September 7, 2001, December 7, 2001, January 4, 2002, and March 19, 2002 were negative. (R. 215, 213, 212, 210). An October 25, 2001 cervical spine MRI showed a C5-6 disc bulge and C6-7 disc protrusion. (R. 317). A lumbar spine x-ray performed the same day showed preserved disc spaces, intact posterior elements, and maintained vertebral height and aligned, and overall no significant osseous abnormality. (R. 319). A June 2002 lumbar spine MRI showed no canal stenosis, no lumbar stenosis, and no disc degeneration. (R. 248-49). The physician reviewing the lumbar spine MRI recommended only physical therapy and Bextra. (R. 249).

On April 26, 2003, the Plaintiff saw Matthew Berger, M.D., for psychological evaluation. (R. 291-92). Dr. Berger noted that the Plaintiff's past psychiatric history was "entirely negative," with no prior psychiatric treatment nor history of depression. (R. 291).[2] Dr. Berger noted that the Plaintiff looked unhappy, had a glum demeanor, and was tearful and angry. (R. 292). At the same time, the Plaintiff was friendly, fully communicative, and fully oriented and showed "no signs of anxiety." *Id*. Suicidal thoughts were "convincingly denied." *Id*. Her thought processes were

---

[2] Dr. Aronica had, however, previously (in December 2001) given the Plaintiff Prozac to "try" after she said she was "getting depressed." (R. 213). The Plaintiff told Dr. Aronica that the Prozac was helping in January 2002 and by March 2002, had stopped taking it, an action Dr. Aronica supported. (R. 212).

6

logical and her social judgment intact. *Id*. Dr. Berger diagnosed a depressive disorder, recommended a counselor, and prescribed Effexor and Klonopin. *Id*. No evidence that the Plaintiff ever sought further treatment for depression appears in the record.

The Plaintiff made several subjective complaints of physical pain and resulting limitations in her application and at the hearing. (R. 76-79, 82-84, 785-790). The Plaintiff claimed that her three children do most of the cleaning because she is in too much pain. (R. 76). She testified that she could not stand for more than ten minutes; twenty minutes would be "pushing it." She claimed to have "muscle spasms while . . . doing [her] hair or brushing [her] teeth and to have trouble getting dressed. (R. 785). She said he was "lucky if [she] could sit [for] twenty minutes." (R. 790). She testified that she rarely drives and that standing to prepare meals or wash dishes causes pain. *Id*.

The record does not bear out the Plaintiff's claims. Her physical therapy notes revealed that she had done housework while attending physical therapy, despite her pain complaints, including scrubbing her kitchen cabinets in August 2001, a few weeks after her accident. (R. 138). She reported being sore on November 12, 2001 from doing "too much housecleaning" and on November 15, 2001, reportedly "painted a room" the day before (R. 130). She reported no pain while painting but was sore the next day. *Id*. When the ALJ asked the Plaintiff about the painting at the hearing, she claimed that she had only painted part of a wall, and could not finish due to pain. (R. 17). The ALJ pointed out that the therapy notes did not confirm that story, and found her version of events not credible. (R. 17). The Plaintiff admitted to having cleaned her whole house, dusting the ceilings and around the curtains, in March 2002. (R. 210, 794). That same month, Dr.

Aronica told her to try another kind of work besides boat detailing, and she agreed she would consider another occupation. (R. 211, 794).

### B. Whether substantial evidence supports the ALJ's finding that the Plaintiff's impairments did not meet or equal the listed impairments

The Plaintiff argues that the ALJ erred in finding that her back pain and depression did not meet or equal the severity requirements of Listings 1.04 and 12.04, respectively.

#### 1. The ALJ did not err in finding that the Plaintiff's back pain did not meet or equal the requirements of Listing 1.04.

The Plaintiff specifically argues that she met the criteria of Listing 1.04(A). Because the Plaintiff's back impairment involved her lumbar spine, we considered Listing 1.04(C) as well. To meet the criteria of either, the Plaintiff must show a disorder of the spine "resulting in compromise of a nerve root or the spinal cord" with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> 
> or . . .
> 
> C. Lumbar spine stenosis resulting in peseudoclaudication established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.

20 C.F.R. Pt. 404, subpt. P, App. 1, Listing 1.04(A), (C).

The burden is on the Plaintiff, who is "in a better position to provide information," to show a disability. *Bowen v. Yuckert*, 482 U.S. 137, 147 (1987). Here, the

Plaintiff did not meet her burden of proving that she met the criteria of Listing 1.04.  She has not shown where her medical records show any nerve root or spinal cord compromise.  Listing 1.04(A).  An MRI of her lumbar spine showed no disc degeneration, no nerve root/spinal herniations, and no canal stenosis.  (R. 249).  Listing 1.04(C).  An MRI of her cervical spine showed no focal herniations or neural impingements.  (R. 317).  All of the straight leg raise tests performed were negative.  (R. R. 215, 213, 212, 210).  Listing 1.04(C).  Therefore, no medical evidence in the record confirms the requirements of Listing 1.04(A) or (C).

### 2.  The ALJ did not err in finding that the Plaintiff's depression did not meet or equal the requirements of Listing 12.04.

To meet the requirements for Listing 12.04, for affective disorders, the Plaintiff had to show "medically documented persistence, either continuous or intermittent, of one of the following:"

> 1. Depressive syndrome characterized by at least four of the following:
>> a. Anhedonia or pervasive loss of interest in almost all activities; or
>> b. Appetite disturbance with change in weight;
>> c. Sleep disturbance; or
>> d. Psychomotor agitation or retardation; or
>> e. Decreased energy; or
>> f. Feelings of guilt or worthlessness; or
>> g. Difficulty concentrating or thinking; or
>> h. Thoughts of suicide; or
>> i. Hallucinations, delusions or paranoid thinking.
>
> The claimant must also demonstrate the requisite level of severity in at least two of the subsection B criteria:
>> 1. Marked restriction of activities of daily living; or

> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
>
> 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(A), (B).

The ALJ found that the Plaintiff did not meet any of the four criteria of Listing 12.04(B), citing substantial evidence. (R. 14). First, the ALJ found that the Plaintiff had only mild restrictions on her activities of daily living, noting that she performed housework, painted, shopped, and drove, and that she had even told Dr. Berger that she attributed limitations on her daily activities to her physical condition. (R. 14, 130, 138, 210, 211, 291). The ALJ also found only mild difficulty maintaining social function; Dr. Berger had found her social judgment intact, and she had a fiancé. (R. 14, 292). Third, the ALJ found only mild difficulties with concentration, persistence, and pace, and no repeated episodes of decompensation, referring to Dr. Berger's notes about the Plaintiff' mental status. (R. 14, 292). Finally, the ALJ noted that no episodes of decompensation appeared in the record. (R. 14). We find that the ALJ has cited substantial evidence that the Plaintiff did not meet the requirement of Listing 12.04(B), and the Plaintiff had failed to meet her burden of proving that she did. *Yuckert*, 482 U.S. 137, 147 (1987).

***C. Whether there is substantial evidence to support the ALJ's finding that the Plaintiff could perform light work***

Finally, the Plaintiff argues that the ALJ erred in finding that the Plaintiff could make an adjustment to a different type of work.  The Plaintiff specifically argues that she cannot perform light work because she suffers from great pain and has difficulty performing household chores and caring for her personal needs.  The ALJ, however, found the Plaintiff's claimed limitations to be not fully credible, and substantial evidence supports this.  (R. 17, 31).

We note that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *see also Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir.1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.")." *Frazier v. Apfel*, 2000 WL 288246 (E.D.P.A. 2000).  Of course, "[a]n ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985).  Yet subjective complaints, without more, do not in themselves constitute a disability.  *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984).

Here, the Plaintiff's subjective complaints were not borne out by the medical records.  As previously discussed, several objective tests showed no significant and persistent osseous or musculoskeletal back problems.  (R. 215, 213, 212, 210, 317, 319, 248-49).  The variation between the Plaintiff's hearing testimony and documented accounts of her daily activities also undercut her credibility with regard to her limitations.  (R. 17, 28, 130, 138, 210-11, 794)**.**  The

11

ALJ noted giving consideration to the Plaintiff's subjective complaints, but ultimately did not find them supported by either her medical records or her daily activities. (R. 20-29).

**V. RECOMMENDATION.**

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal be **DENIED**.

<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: December 16, 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMI COUTTS, | : | CIVIL ACTION NO. **3:CV-05-512** |
| | : | |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **December 16, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection

is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                            **s/ Thomas M. Blewitt**
                                            **THOMAS M. BLEWITT**
                                            **United States Magistrate Judge**

**Dated: December 16, 2005**